**Robert M. BOYAR, Personal Representative of the Estate of Michael Truppin, Deceased, Plaintiff,**

v.

**KOREAN AIR LINES CO., LTD., Defendant.**

**Robert M. BOYAR, Personal Representative of the Estate of Jan Moline, Plaintiff,**

v.

**KOREAN AIR LINES CO., LTD., Defendant.**

**Civil Action Nos. 84–0332(AER), 84–0331(AER).**

United States District Court, District of Columbia.

Nov. 6, 1996.

---

**5**

Juanita M. Madole, Frank H. Granito, Jr., Speiser, Krause, Madole & Cook, Irvine, CA, for Plaintiff.

George N. Tompkins, Jr., George N. Tompkins, III, White Plains, NY, Timothy J. Lynes, Condon & Forsyth, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

AUBREY E. ROBINSON, Jr., District Judge.

This matter is before the Court on Defendant's Motion in Limine to Preclude the Testimony of Dr. Thomas Borzilleri. The Court heard oral argument on this motion on October 21, 1996. For the reasons set forth herein, Defendant's Motion is **DENIED.**

### I. BACKGROUND

These cases are consolidated death actions brought against Defendant Korean Air Lines Co., Ltd. ("KAL") by the personal representative of the estates of Dr. Michael Truppin

("Dr. Truppin") and his wife, Jan Moline ("Ms. Moline") (collectively, "the decedents"). Dr. Truppin and Ms. Moline were passengers aboard KAL flight KE007 who were killed when the flight was shot down by the Soviet Union on September 1, 1983. This Court has previously determined that KAL is liable for the deaths of Dr. Truppin and Ms. Moline. *In re Korean Air Lines Disaster of Sept. 1.1983*, 932 F.2d 1475 (D.C.Cir.), *cert. denied*, 502 U.S. 994, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991). Still pending and awaiting trial is the question of the amount of KAL's liability.

Plaintiff has asserted various claims for damages including loss of support and loss of inheritance. To prove the amount of its damages, Plaintiff has retained Dr. Thomas Borzilleri ("Dr. Borzilleri") to testify regarding the lost economic accumulations of the decedents. Pursuant to Federal Rule of Civil Procedure 16(c)(3) and Federal Rules of Evidence 702 and 703, Defendant has moved *in limine* to exclude Dr. Borzilleri's testimony as speculative, conjectural, and based upon improper and unfounded assumptions.

### A. Plaintiff's Factual Proffer

Plaintiff has proffered the following facts which he believes will be established by the evidence at trial regarding the financial condition of the decedents. At the time of death, Dr. Truppin was 57 and Ms. Moline was 45. The couple owned and operated three related business entities. Dr. Truppin was an obstetrician/gynecologist and operated Michael Truppin M.D., P.C., a medical practice in New York. Ms. Moline owned and operated Moline Medical Management, which provided staffing to the medical practice. Finally, Dr. Truppin and Ms. Moline jointly owned TBM leasing, which leased medical equipment to the medical practice.

The focus of KAL's objection to Dr. Borzilleri's testimony is on the projections for income that Dr. Borzilleri makes for Dr. Truppin's medical practice. Plaintiff proffers that the decedents had positioned themselves for great financial gain during the years preceding Dr. Truppin's retirement. Prior to 1979, Dr. Truppin had operated a solo medical practice from a small office on Fifth Avenue

in New York City. However, after 1979, and in the four years preceding his death, Dr. Truppin began expanding his practice. By the time of his death in 1983, Dr. Truppin had joined with the equivalent total of four full time physicians operating out of both the original Fifth Avenue office and a new office that Dr. Truppin acquired in 1979.

The 1979 office, Plaintiff proffers, provides much insight into the plans of Dr. Truppin. This office was extremely modern and spacious. At the time of his death, Dr. Truppin operated the office with four full time physicians, each of which had been added to the practice from 1979 to 1983. In addition, Dr. Truppin leased half of the office space to a psychiatrist who was not affiliated with Dr. Truppin's practice. However, that lease expired in late 1983, at which time Plaintiff avers that Dr. Truppin intended to further expand his practice by adding doctors to the vacated space. Ultimately, Plaintiff proffers that Dr. Truppin intended to support a total of eight physicians, thereby maximizing the space available to him in the new office.

In addition, Plaintiff proffers that Dr. Truppin and Ms. Moline had entered into several loan agreements with Barclay's Bank to support the expansion of the medical practice. The purpose of the loans was to renovate office space and modernize office equipment. Two months prior to their deaths, the decedents renegotiated the loans, apparently in an effort to further advance their expansion plans.

Finally, Plaintiff rests on his own testimony as evidence of Dr. Truppin's expansion plans. Plaintiff was a lawyer, financial advisor, and close personal friend to the decedents. He contends that he had extensive discussions with decedents regarding their plans for expanding the medical practice.

### B. *Dr. Borzilleri's Proposed Testimony*

As stated by KAL, the "underlying assumption upon which Borzilleri bases his projections is that the decedents had definite plans for significant and substantial expansion of the medical practice in which the number of physicians employed essentially would double and the income of the decedents would increase significantly." Defen-

dant's Statement of Points & Authorities in Support of Motion in Limine at 3. As KAL points out, Dr. Borzilleri's calculations rely chiefly upon the representations made by Plaintiff and Plaintiff's counsel regarding the planned expansion of Dr. Truppin's practice. Dr. Borzilleri received this information during discussions with Plaintiff and in several letters from Plaintiff's counsel to Dr. Borzilleri.

Based upon that information, Dr. Borzilleri produced two scenarios, one which assumed that Dr. Truppin's medical practice would expand to seven full time physicians, and the other which assumed that the practice would remain at four full time physicians. In the first scenario, Dr. Borzilleri calculated that the decedents would have accumulated $3.4 million by the end of their lifetimes. In the second scenario, Dr. Borzilleri calculated that decedents would have accumulated $1.4 million. In both cases, Dr. Borzilleri accounted for personal consumption and taxes before arriving at the final figures.

In addition, Dr. Borzilleri makes a variety of other calculations from his assumption about the expansion of Dr. Truppin's practice. For example, Dr. Borzilleri calculated the decedents' individual earnings and the value of the ultimate sale of the medical practice based upon the assumptions of the profitability and expansion of the medical practice.

### II. Discussion

#### A. *Legal Standard*

Federal Rule of Evidence 702 states that:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed. R. Ev. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the United States Supreme Court discussed the admission of evidence under Rule 702. In *Daubert*, the Court was called upon to determine the standard under Rule 702 for the

admission of scientific testimony. *Daubert,* 509 U.S. at 582, 113 S.Ct. at 2791. Although *Daubert* involved specifically the standard for admitting expert scientific evidence, the Court specifically discussed the trial court's role in evaluating any proffer of testimony under Rule 702.

In *Daubert,* the Court indicated that the trial court has a "gatekeeping responsibility" to, as a preliminary matter, determine whether expert scientific testimony is both relevant and reliable. *Id.* at 589, 113 S.Ct. at 2794–95; *see also id.* at 597, 113 S.Ct. at 2799 (stating that "the Rules of Evidence—especially Rule 702—do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand"). More specifically, the Court instructs that:

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Id.* at 592–93, 113 S.Ct. at 2796. Accordingly, it is clear that this Court must make a preliminary determination regarding the admissibility of Plaintiff's expert testimony. *See, e.g., Tyger Constr. Co. Inc. v. Pensacola Constr. Co.,* 29 F.3d 137, 143 (4th Cir.1994) (indicating that it is improper to allow the jury to see all expert testimony without a preliminary evaluation, because the "court may not abdicate its responsibility to ensure that only properly admitted evidence is considered by the jury"), *cert. denied,* 513 U.S. 1080, 115 S.Ct. 729, 130 L.Ed.2d 633 (1995); *Joy v. Bell Helicopter Textron Inc.,* 999 F.2d 549, 569 (D.C.Cir.1993) (noting that it is improper to toss the "the decision to receive expert testimony ... off to the jury under a let it all in philosophy") (citations and internal quotation marks omitted).

In making this preliminary evaluation of expert testimony, the Court has broad discretion and will be reversed only if its discretion is abused. *Joy,* 999 F.2d at 567. The Court must exclude expert testimony that is speculative, guesswork, conjecture, and the like. *Id.* at 567–68 (citing *Burlington Northern, Inc. v. Boxberger,* 529 F.2d 284, 286–87 (9th Cir.1975) for the proposition that "admission of expert testimony constitutes an abuse of discretion only when that testimony qualifies as 'rampant speculation'"); *see also Tyger Constr.,* 29 F.3d at 142 ("An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record."). Conversely, it is not proper for the Court to exclude expert testimony "merely because the factual bases for an expert's opinion are weak." *Joy,* 999 F.2d at 567.

The issue for the Court to determine is whether this is a case where Dr. Borzilleri's assumptions amount to "rampant speculation" and should be excluded, or whether his assumptions merely represent a weak factual basis for his testimony that is appropriately challenged on cross examination. The Court finds helpful the discussion by the United States Court of Appeals for the Second Circuit in *Boucher v. U.S. Suzuki Motor Corp,* 73 F.3d 18, 21 (2d Cir.1996):

> It is well established that the trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained-unless manifestly erroneous. Although expert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison, other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony. A district court has discretion under Federal Rule of Evidence 703 to determine whether the expert acted reasonably in making assumptions of fact upon which he would base his testimony.

Where lost future earnings are at issue, an expert's testimony should be excluded as speculative if it is based on unrealistic

assumptions regarding the plaintiff's future employment prospects.

*Boucher,* 73 F.3d at 21 (citations and internal quotation marks omitted).

In differentiating between admissible and inadmissible expert testimony, the Court is mindful of the fact that neither it nor counsel is in position to know, for purposes of this motion *in limine,* what the evidence will prove at trial. Instead, the Court must look at the evidence as proffered by its proponent, including the expert's report and all factual assertions upon which that report is based, to determine if the testimony is properly admitted.

### B. *Dr. Borzilleri's Testimony is Not Speculative as a Matter of Law and is Admissible*

In short, the principles relating to the admission of expert testimony under Rule 702 require that the Court make a preliminary determination that Dr. Borzilleri's proposed testimony is not based upon factual assumptions that constitute "ampant speculation." KAL's main objection to Dr. Borzilleri's testimony is that his calculations are based upon the assumption that Dr. Truppin would have expanded his practice and that it would be highly profitable to do so. KAL argues that there is no factual basis for this assumption other than the representations made by Plaintiff and his counsel. Thus, KAL argues, testimony based on an assumption without a sufficient factual basis is speculative and must be excluded.

Upon a review of the evidence as proffered by Plaintiff, the Court finds that the factual assumptions upon which Dr. Borzilleri's report is based are not speculative as a matter of law. The Court finds that it is reasonable for Dr. Borzilleri to compute figures based upon Dr. Truppin's possible expansion of the medical practice and related businesses. While any evaluation of possible future events is, as the word is commonly used, "speculation," there are a number of facts from which to infer that Dr. Truppin's practice would in fact incur the great prosperity predicted by Dr. Borzilleri. These facts, as highlighted by Plaintiff's counsel during oral argument on this motion, include Dr. Trup-

pin's expansion of his practice in the years preceding his death, the move of his practice to spacious, modern offices, the Barclay's bank loans, and the testimony of Plaintiff.

Given these facts, the Court finds that the assumption that Dr. Truppin planned to successfully expand his medical practice is not unreasonable. Rather, that assumption is a rational inference from the facts as proffered by Plaintiff. Assuming that these facts are established at trial, the jury may decide whether Dr. Borzilleri's assumptions based on those facts are valid. The Court can not say as a matter of law that those assumptions are so unreasonable so as to constitute "rampant speculation" that should not be heard and evaluated by the jury.

The Court finds that this case is distinguishable from the cases cited by KAL for the exclusion of the evidence. KAL relies heavily on this Circuit's opinion in *Joy,* 999 F.2d at 567–70. However, in *Joy,* the expert based his calculations on his conversations with the decedent's wife and the single fact that the decedent had once assisted a woman to open a toy store. *Joy,* 999 F.2d at 568. From this information, the expert performed calculations assuming that the decedent would move into a profitable toy store consulting business, rather than remaining in his current occupation as owner and operator of a small toy store. *Id.* Allowing such testimony was in error because "the assumption that Mr. Joy would move into consulting and wholesaling appears to be wholly speculative. Indeed, Dr. Glennie simply made up new lines of work for Mr. Joy." *Id.* at 569. Unlike the situation in *Joy* where the court was presented with only "one lone instance," 999 F.2d at 569, to support the expert's calculations, the factual basis for Dr. Borzilleri's calculations is comprised of a number of facts that, if proven, provide a reasonable basis for the testimony. Plaintiff cites at least three factual basis from which it may be inferred that Dr. Truppin intended to expand his practice in the years leading up to his retirement, which is clearly more solid a basis for the testimony than the single fact presented in *Joy.*

Similarly, a number of other cases exclude expert testimony because the factual assump-

tion upon which it was based was faulty and plainly contradicted by the evidence. For instance, in *Boucher,* the expert based his analysis on "employment prospects that represent a complete break from [the Plaintiff's] work history of seasonal and intermittent employment.... [N]othing of probative value ... accounts for the reversal assumed by the expert." *Boucher,* 73 F.3d at 22. Similarly, in *Quinones–Pacheco v. American Airlines, Inc.,* 979 F.2d 1, 6–7 (1st Cir.1992), the Court held that it was proper for the trial judge to exclude *in limine* expert testimony that calculated damages based on a complete disability of the Plaintiff, where in fact the plaintiff was only partially disabled. Finally, in *In re Air Crash Disaster at New Orleans, Louisiana on July 9, 1982,* 795 F.2d 1230 (5th Cir.1986), the Court held that it was improper for the trial judge to admit expert testimony that assumed that decedent's income would increase by eight percent every year for 40 years, while paying only five percent in taxes. In each of these cases, the expert's calculations were based on facts that were clearly contradicted by the evidence. Because the factual underpinning for the expert's assumptions was clearly wrong, the expert testimony in each of those cases should have been excluded.

Conversely, KAL has not presented facts that plainly contradict the factual basis for the assumption that Dr. Truppin was planning to expand the medical practice. Instead, KAL challenges whether that factual basis exists, and, if it does exist, whether the inferences from those factual underpinnings are speculative. As indicated above, the Court finds sufficient evidence from which the jury may infer that Dr. Truppin's practice could have profited as predicted by Dr. Borzilleri. Because it is not clear as a matter of law that the factual basis is incorrect, Dr. Borzilleri's assumption based on those facts is not clearly speculative, and KAL's motion must be denied.

### III. Conclusion

For the foregoing reasons, it is by the Court this 6th day of November 1996,

**ORDERED**, that Defendant's Motion in Limine to Preclude the Testimony of Dr. Thomas Borzilleri be and hereby is **DENIED.**