CLAY, Circuit Judge,
concurring.
I agree with the majority that Plaintiff did not put forward sufficient evidence to permit a reasonably certain determination of its damages. I write separately because I believe Ohio law requires a more precise consideration of the proofs than the analysis offered by the majority.
In particular, I take exception to the suggestion in the- majority opinion that a company in Plaintiff’s position, or any company prevented from entering a new market, would face a “stricter inquiry” in proving its damages. Ohio law allows even entirely new businesses to proceed under the “general test ... for the recovery of *514 lost profits” and expressly recognizes that such businesses may prove their damages through circumstantial evidence. AGF, Inc. v. Great Lakes Heat Treating Co., 51 Ohio St.3d 177, 555 N.E.2d 634, 638 (1990).
I also write separately in order to clarify the circumstances in which I believe a plaintiff may prove lost profits damages by comparison to its performance in another market. Proof of lost profits poses an inescapably hypothetical question, as the Ohio Supreme Court recognized in AGF, and thus inevitably requires a degree of estimation. See id. A plaintiffs track record of successful performance in other markets is a source of reliable and pertinent data that I believe in many cases will strengthen the certainty of damages calculations. Cf. MindGames, Inc. v. W. Pub. Co., 218 F.3d 652, 654-55 (7th Cir.2000) (a track record of successful sales of past games could allow the creator of a board game to establish lost profits with sufficient certainty). Indeed, in a similar case, the United States Supreme Court approved evidence of lost profits based on a market comparison similar to the approach urged by Plaintiff here. See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 116 and n. 11, 123-25, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969) (accepting estimates that the plaintiff would have achieved a 16% market share in Canada absent the breach where the estimates were based on a comparison of the plaintiffs sales in the US).
Nonetheless, I believe that Plaintiff in this case has not introduced sufficient evidence to allow a factfinder to determine damages with a reasonable degree of certainty and therefore concur in the judgment. I would affirm the exclusion of Russell’s expert report solely because, as the majority explains, it unquestioningly accepts Plaintiffs projections about the sales and market share the company would have achieved in Japan and dresses up those unsupported estimates in the authority of an expert analysis. I find the remaining evidence put forward by Plaintiff inadequate to allow a factfinder to calculate damages with any reasonable degree of certainty for a single, narrow reason: Plaintiff has inexplicably failed to support its estimates about the Japanese riser sleeve market with any data, analysis, or expert opinion. Instead, it relies on a single-page, undated spreadsheet with “guesses” as to the market share and sales volume of its three competitors in Japan. Without more, a factfinder would be unable to translate Plaintiffs successful track record in North America and Europe into any reasonable projection of sales and profits that Plaintiff could have achieved in Japan.
1. Exclusion of the Expert Report
Although I agree with the majority that Russell’s report should be excluded because it uncritically accepts and relies on Plaintiffs own revenue projections, I part ways with the majority when it suggests that Russell was remiss for failing to include and rely on “basic, objective figures” like Plaintiffs “market penetration,” “sales,” and “direct costs” in Japan. Maj. Op. at 510. The majority argues that without these figures “any projection or calculation” of lost profits would be too speculative to meet the standards for expert testimony. Id. (emphasis added). This reasoning sets up an impossible hurdle in a case like the present one, where by definition the measure of damages is a coun-terfactual: what profits would Plaintiff have earned had Defendant not breached the contract? I perceive nothing in Federal Rule of Evidence 702 that prevents an expert from offering such an estimate or projection, so long as it is supported by sufficient, albeit circumstantial, facts and data. See, e.g., Andler v. Clear Channel *515 Broadcasting, Inc., 670 F.3d 717, 727-29 (6th Cir.2012) (holding that the district court erred in excluding expert testimony that would have provided projections of the plaintiffs lost earning capacity based on a statistical average salary); Multimatic, Inc. v. Faurecia Interior Systems USA, Inc., 358 Fed.Appx. 643, 650-51 (6th Cir.2009) (relying on expert’s testimony rejected projected lost profits and indicating that the expert “had a reasoned, non-speculative basis” for his projections where his data “came from a reliable industry forecaster”).
For the same reason, I cannot agree with the majority’s suggestion that it would be improper for Russell to rely on the 2011 global market survey setting out sales and market share for Plaintiff and its competitors in various regional markets. The data in that document, while not sufficient standing alone to support a computation of lost profits, is circumstantial evidence relevant to estimating the sales and market share Plaintiff may have achieved in Japan absent Defendant’s breach, and could justly be relied on by the expert.
The principal shortcoming in Russell’s report, in fact, is that he did not rely on the 2011 global market survey or similar sources to generate a projection of Plaintiffs probable sales, market share, and royalties, but instead unquestioningly adopted Plaintiffs own revenue estimates and used those estimates as the basis for his calculations.
2. Summary Judgment
Under AGF, supra, Plaintiff is entitled to rely on circumstantial data to support its lost profits damages. See 555 N.E.2d at 638 (holding that a new business venture may establish lost profits damages “with reasonable certainty with the aid of expert testimony, economic and financial data, market surveys and analyses, business records of similar enterprises, and the like.”). The majority opinion, however, asserts that because “ASK had no track record of riser-sleeve sales in Japan aside from the decade-old effort that had been abandoned following the factory fire,” it lacks a “reliable track record” and therefore will face a “stricter inquiry” into its lost profits calculations. Maj. Op. at 513. The majority also writes that because Plaintiff “had almost no sales history” in Japan, “any attempt to demonstrate lost profits ... would necessarily suffer from a lack of hard data.” Id. This analysis proves little, however, because any new business would lack a sales history, and yet under Ohio law, that business may recover lost profits. See 555 N.E.2d at 638-39. Moreover, it strikes me as odd to suggest that Plaintiff lacks a “reliable track record” or any relevant “sales history” when it successfully competes in at least two other regional markets selling the same product it would have sold in Japan.
I believe the majority too casually rejects the most reliable source of circumstantial data Plaintiff could rely on — the company’s performance in the riser sleeve markets of other parts of the world. See Maj. Op. at 513 (suggesting that “analogizing sales in one region of the world with potential sales in another.... without more, is insufficient to establish lost profits to a reasonable certainty.”). I believe such cursory treatment of the comparative evidence to be unwarranted. Because I am concerned that the majority opinion treats this issue without adequate precision, I will briefly set out my own analysis here.
Courts have rightly recognized that “some degree of speculation is permissible in computing damages, because reasonable doubts as to remedy ought to be resolved against the wrongdoer.” MindGames, *516 Inc. v. W. Publ’g Co. Inc., 218 F.3d 652, 658 (7th Cir.2000) (internal citation and quotation omitted) quoted in Telxon Corp. v. Smart Media of Del., Inc., 2005-Ohio-4931, 2005 WL 2292800 at *44 (Ohio Ct.App.2005). See also Restatement (Second) of Contracts § 352, cmt. a (“Doubts are generally resolved against the party in breach.”)- Nonetheless, Ohio law prudently limits speculation by requiring that “[a] plaintiff may not merely assert that it would have made a particular amount of profits, but must prove lost profits with calculations based on facts.” UZ Engineered Prods. Co. v. Midwest Motor Supply Co., Inc., 147 Ohio App.3d 382, 770 N.E.2d 1068, 1083 (2001). See also Endersby v. Schneppe, 73 Ohio App.3d 212, 596 N.E.2d 1081, 1084 (1991) (“Unless the figure is substantiated by calculations based on facts available or in evidence, the courts will properly reject it as speculative and uncertain.”).
For this reason, to the extent that the majority opinion suggests that proof of lost profits by reference to Plaintiffs successful record in other markets, as a method, is unlikely to meet the standards of “reasonable certainty,” I respectfully disagree. To the contrary, comparative evidence— whether drawn from the plaintiffs performance in another market, the experience of another company in the same market, or from a past business venture of the plaintiff — can improve the certainty of a computation of lost profits by anchoring the projected profits to a body of empirical fact. See Zenith Corp., 395 U.S. at 116, 124-25, 89 S.Ct. 1562 (accepting evidence from plaintiffs performance in other markets); AGF, 555 N.E.2d at 638 n. 1 (suggesting that‘records from similar businesses in the same locality can be used to prove a company’s lost profits); MindGames, 218 F.3d at 658 (stating that a successful track record in prior endeavors may furnish a basis for estimates of probable sales lost due to a defendant’s breach).
Zenith Corp., supra, is illustrative. In that case, the Supreme Court considered a damages award based on a patent pool’s anti-competitive conduct in denying Zenith licensing agreements that would have facilitated its sales of radios and television sets in Canada. 395 U.S. at 114-18, 89 S.Ct. 1562. The evidence included a computation of damages, prepared by Zenith’s experts, that “reflect[ed] a comparison between Zenith’s percentage share of the United States television market ... and Zenith’s actual share of the Canadian market during the same period.” Id. at 116 n. 11, 89 S.Ct. 1562. The Supreme Court soundly advised that
[tjrial and appellate courts alike must ... observe the practical limits of the burden of proof which [may] be demanded of a ... plaintiff who seeks recovery for injuries from a partial or total exclusion from a market; damage issues in these cases are rarely susceptible of the kind of concrete, detailed proof of injury which is available in other contexts.
Id. at 123, 89 S.Ct. 1562. The Court held Zenith’s evidence — including testimony that the breach “prevented its securing a share of the market comparable to that which it enjoyed in the United States, and which its business proficiency, demonstrated in the United States, dictated it should have obtained in Canada” — supported an award of damages. Id. at 124-25, 89 S.Ct. 1562.
Of course, “[a] comparison of two different markets will always be open to the argument that the markets are fundamentally incomparable, like apples and oranges.” Rose Confections, Inc. v. Ambrosia Chocolate Co., 816 F.2d 381, 394 n. 7 (8th Cir.1987). However, where there is a reasonable basis for comparing the markets, in the interest of allowing the factfin- *517 der to consider relevant evidence that might limit undue speculation in the calculation of lost profits, I believe that the differences should be reserved “for the jury to weigh.” See id.
I believe Plaintiffs track record of successful sales, market share, and royalties in North America and Europe may be validly used to estimate the revenues it could have achieved in Japan. The fact that the respective markets are for the same product, riser sleeves, used for the same industrial purposes, is a sufficient basis for comparing them. The comparable nature of the three markets is further demonstrated by the presence of one of Plaintiff’s principal competitors in each. In order to translate Plaintiff’s success in other regions into projections of lost profits in Japan, however, a factfinder would need a minimum quantum of basic information about the Japanese riser sleeve market, such as its size. Plaintiff’s evidence about the Japanese market is inadequate to allow such a projection to be calculated with reasonable certainty.
Plaintiff heavily relies on a document that it describes as a “market survey” of the Japanese riser sleeve market. Plaintiff relies on the numbers in that document to describe the total size of the Japanese riser sleeve market, to estimate the share of that market it could achieve, and ultimately to calculate the revenues it would have received. This purported “survey,” however, is nothing more than a single page document setting out supposed sales and market share for Plaintiffs three, competitors in Japan from 2008 to 2010. The document is undated, leaving it unclear if the numbers are intended as forecasts or estimates of past sales. The sale’s numbers are prominently described by the column heading, “Guess.” (R. 46-12, “Japanese Survey,” filed under seal.) The market share numbers also appear to be rough estimates. According to Plaintiffs 30(b)(6). deposition testimony, because there are no industry groups that collect and provide data on the riser sleeve market in Japan, the numbers in this purported survey are “educated guesses” based on “market intelligence.” (R. 35-4, ASK Deposition, p. 187, under seal). Finally, nothing in the document speaks to the market for a license to produce the Exact-cast technology by any of Plaintiffs competitors.
Although I am sympathetic to the challenges Plaintiff faces in marshalling evidence about the riser sleeve market in Japan, an undated document revealing acknowledged guesses with no justification for those guesses is simply not enough to support a “reasonably certain” computation of the profits Plaintiff could have achieved in Japan. Instead of confronting the challenge head-on and putting before the court the bases for its estimates of the Japanese market, including any testimony or data relevant to or corroborative of its calculations, Plaintiff instead asks us to rely, essentially, on its say-so. These proofs fail to meet the requirement that a plaintiff “prove lost profits with calculations based on facts.” See UZ Engineered Prods., 770 N.E.2d at 1083.
Conclusion
In sum, while I disagree with the reasoning in the majority opinion, I believe that it reaches the correct result. Therefore, I concur in the judgment.