**RAY, Appellant,**

v.

**RAMADA INN NORTH et al., Appellees.**

[Cite as *Ray v. Ramada Inn N.*, 171 Ohio App.3d 1, 2007-Ohio-1341.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21679.

Decided March 23, 2007.

Richard B. Reiling, for appellant.

Subashi, Wildermuth & Ballato, Brian L. Wildermuth, and Anne P. Keeton, for appellees.

FAIN, Judge.

{¶ 1} Plaintiff-appellant, Jeff John Ray, appeals from a summary judgment rendered against him on his claim for personal injury, arising out of Ray's slip and fall when he entered the premises of defendant-appellee Ramada Inn North. Ray contends that the trial court erred in failing to consider an incident report

and a recorded statement. Ray further contends that the trial court erred in determining that he was a licensee while at the Ramada Inn North.

{¶ 2} We conclude that the trial court erred in rendering summary judgment in favor of Ramada Inn North, because Ray was an invitee, not a licensee, and there are genuine issues of material fact concerning whether Ramada failed to warn Ray of a known dangerous condition. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for further proceedings.

I

{¶ 3} In mid-March 2001, Jessica Gordon had been renting a room at the Ramada Inn North ("Ramada") for a few days. Gordon had been taking care of her mother and needed to get away. At the time, Gordon's daughter, Tammie Payne, lived nearby in Vandalia, Ohio, with her fiancé, Jeff John Ray.

{¶ 4} On the day that Ray's fall occurred, Ray and Tammie were getting ready to go out to look for carpet for Ray's home office. Tammie received a call at home from Gordon, who asked if Ray and Tammie would bring her some Coke and milk, since they were going out. Ray and Tammie were not staying at Ramada and would not otherwise have stopped at the hotel. Ray was in a rush and wanted to get to the hotel and get the errand done. He planned to stay only ten or 15 minutes to visit and then leave.

{¶ 5} During his deposition, Ray clearly indicated that he was not a guest of the hotel. Specifically, the following exchange took place:

{¶ 6} "Q. You weren't staying at the hotel at this time, were you?

{¶ 7} "A. No.

{¶ 8} "Q. Neither was Tammie?

{¶ 9} "A. No.

{¶ 10} "Q. You were helping her out, giving her Coke on the way to get stuff for the bathroom?

{¶ 11} "A. Not for the bathroom, we were on the way to look for carpet.

{¶ 12} "Q. For your office?

{¶ 13} "A. Yeah, for the office.

{¶ 14} "Q. And the only reason you stopped at the hotel at all, if I understand correctly, was that Tammie's mom had said on the way down, will you bring me these items?

{¶ 15} "A. Right.

{¶ 16} "Q. Other than that, you wouldn't have gone there, would you?

{¶ 17} "A. No, no."

{¶ 18} The weather that day was hazy and damp, with mild, drizzling rain. Ray parked about 50 feet away from Ramada's side entrance and went in through that entrance rather than through the main lobby, because the side entrance was closer to the room in which Gordon was staying. Ray was carrying a 12–pack of Coke and a half-gallon of milk, and Tammie was walking ahead of him. They went through an exterior door, and Ray held the door for Tammie. She then went through another door that opened into the main hallway on the first floor. Ray and Tammie were talking. Ray stepped in, and the next thing he knew, he had fallen and was on the floor. A hotel maid, Juwanna Crooks, was in the hallway at the time of the fall. Crooks told Ray that she had fallen about an hour and a half earlier in the same area and had told the manager that there was too much wax on the floor.

{¶ 19} During Ray's deposition, the following exchange occurred:

{¶ 20} "Q. When you walked in, you had walked, when you had walked in to this side entrance after going the 50 feet through the parking lot, how was it, I guess are you saying that you slipped on wax?

{¶ 21} "A. If that's what it was.

{¶ 22} "Q. Okay.

{¶ 23} "A. Like I said it happened so fast, there is a few other things that, you know, might have went there.

{¶ 24} "Q. What about your wet shoes?

{¶ 25} "A. The wet shoes, the shoes that I had were hundred dollar Lux. They are oil resistance and the whole nine yards."

{¶ 26} The following further exchange also took place during Ray's deposition:

{¶ 27} "Q. As you sit here today, can you tell me what it is that caused you to fall?

{¶ 28} "A. [Witness shakes head.]

{¶ 29} "Q. You are shaking your head no?

{¶ 30} "A. I have no idea. I have no idea—

{¶ 31} "Q. What caused you to hit the ground.

{¶ 32} "A. What was there. I don't know whether it was because of the wax, too much wax being on the floor like Ms. Crooks said, whether it was because the tiles was missing in there or whether it was because they didn't have a carpeted, an actual carpeted mat in front of the doors like just about every other motel that

you go to has in front of the doors after you walk into them, this place just had solid, hard, hard rubber down there.

{¶ 33} "Q. So whether it was wax or whether it was rubber or whether it was water on your shoes or a bug or broken tile, bottom line what actually cautioned you to fall, as you're sitting here today, you have no idea?

{¶ 34} "A. Only God knows."

{¶ 35} Immediately after taking a break during the deposition, Ray spontaneously volunteered that he believed, after talking to the maid and hotel owner, that he had fallen because of the wax.

{¶ 36} Ramada subsequently filed a motion for summary judgment, claiming that Ray was a licensee and that Ramada owed him a duty only to refrain from willful or wanton conduct that was likely to injure Ray. Ramada further claimed that even if Ray could be considered a business invitee, the act of waxing the floor was consistent with an ordinary duty of care.

{¶ 37} Ray filed an affidavit from his attorney, who verified that true copies of a recorded statement taken from Ray on March 21, 2001, and a copy of an incident/claim form of March 13, 2001, were attached to Ray's memorandum in response to the summary judgment motion. In the response, Ray argued that he was a business invitee because he was carrying items to the room that he and his girlfriend had rented with her mother. Ray further contended that he had slipped on wax that was placed on the floor either by Ramada or a third party with whom Ramada had contracted and that Ramada had failed to warn of the hazard.

{¶ 38} The trial court rejected the claim form and recorded statement because they were not properly submitted under Civ.R. 56. The court further concluded that Ray was a licensee and that Ramada did not willfully or wantonly cause injury to Ray. Accordingly, the trial court rendered summary judgment in favor of Ramada. From the summary judgment rendered against him, Ray appeals.

## II

{¶ 39} Ray's first assignment of error is as follows:

{¶ 40} "The trial court erred by failing to consider the incident report and recorded statement of appellant."

{¶ 41} Under this assignment of error, Ray contends that the trial court erred in refusing to consider two items: (1) an incident report prepared by Ramada and (2) Ray's recorded statement. Ray argues that these items were admissible because they were provided by Ramada during discovery and were business records as provided in Evid.R. 803(6).

{¶ 42} Civ.R 56(C) provides:

{¶ 43} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule."

{¶ 44} Civ.R. 56(E) further provides that affidavits must be based on personal knowledge, shall set forth matters that are admissible in evidence, and "shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." "Personal knowledge" has been defined as " '[k]nowledge of the truth in regard to a particular fact or allegation, which is original, and does not depend on information or hearsay.' * * * Black's Law Dictionary (6 Ed.1990) 873, * * * According to Ohio case law, statements contained in affidavits must be based on personal knowledge and cannot be legal conclusions." *Brannon v. Rinzler* (1991), 77 Ohio App.3d 749, 756, 603 N.E.2d 1049, citing *State v. Licsak* (1974), 41 Ohio App.2d 165, 169, 70 O.O.2d 325, 324 N.E.2d 589.

{¶ 45} As we mentioned, Ray filed a memorandum and an affidavit from his attorney in the trial court. Attached to the attorney's affidavit were an incident/claim form and a recorded statement. Also attached was a set of interrogatory answers that Ramada had prepared. The attorney's affidavit fails to identify, even minimally, the documents or to connect them with anything. Instead, the affidavit simply says that the documents are "true copies" of the claim form and recorded statement.

{¶ 46} The incident/claim form is unsigned and does not even bear the name of the individual who prepared the report. Likewise, the recorded statement does not indicate who took the statement. Furthermore, the interrogatory answers do not identify any documents by name. Question six of the interrogatories asks Ramada to identify "every statement you have from the party or parties propounding these interrogatories, identifying the date each statement was given, the name and address of each person to whom each statement was given, and the verbatim contents of the statement." Ramada's answer to this question does not include any identifying information, but simply says, "Statements attached," with no indication of what statements or documents are being attached.

{¶ 47} Ray's attorney would not have had personal knowledge about the incident/claim form or the recorded statement unless he was the party who had prepared them or unless appropriate identifying information was set out in interrogatory answers or in a deposition by the party with knowledge of the documents. See, e.g., *Babal v. Babal* (June 11, 1992), Cuyahoga App. No. 63044,

1992 WL 136500.  In *Babal*, the court described the requirements under Civ.R. 56(C) for considering an oral statement that has been transcribed.  These requirements include an affidavit from the party conducting the audio interview that identifies the time and place of the recording and indicates that the attached transcription of the audio recording is accurate.  The affiant should also state that the audio recording was made with the knowledge and consent of the party being recorded.  Id. at *4–5.  Since none of these requirements was satisfied in the present case, the evidence did not qualify for consideration under Civ.R. 56(C).

{¶ 48} The documents also were not properly qualified under Evid.R. 803, which provides:

{¶ 49} "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

{¶ 50} "* * *

{¶ 51} "(6) **Records of regularly conducted activity.**  A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Evid. R. 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.  The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."  (Boldface sic.)

{¶ 52} An incident report could be considered an exception to the hearsay rule, but the report would have to be properly incorporated into an affidavit by a person with knowledge of the circumstances surrounding the preparation of the report.  See, e.g., *Stowe v. Toledo Area Regional Transit Auth.*, Wood App. No. L–04–1307, 2005-Ohio-4431, 2005 WL 2048104, at ¶ 21 (employee who had prepared incident report signed affidavit indicating that the report was a true and accurate copy of the document maintained in the ordinary course of business in the employer's claims file).  Again, these requirements were not met in the present case.  Accordingly, the trial court did not err in refusing to consider the content of the incident/claim form and the recorded statement.

{¶ 53} Ray's first assignment of error is overruled.

### III

{¶ 54} Ray's second assignment of error is as follows:

■ {¶ 55} "The trial court erred by determining that appellant was a licensee."

■ {¶ 56} Ray testified in his deposition that he and his fiancée, Tammie, came to Ramada on the day of the accident to deliver Coke and milk to Tammie's mother, who had rented a room at the hotel. Ray's deposition further indicates that the visit was intended to be brief and that neither Ray nor Tammie had rented the room or were staying at the hotel. Ray contends that his recorded statement raises genuine issues of material fact regarding whether he and Tammie also rented the room at the hotel, making Ray a business invitee rather than a licensee. To support this contention, Ray quotes from the following part of the recorded statement:

{¶ 57} "Q. And what was the purpose of you being at the Ramada Inn on Little York Road?

{¶ 58} "A. Me and my fiancée, my fiancée's mother had rented a room there for a couple nights and she wanted us to bring over a 12 pack of Coke and a thing of milk, and uh, that's why we was on our way there."

{¶ 59} As we indicated, the trial court properly refused to consider the recorded statement, because it was not submitted in compliance with Civ.R. 56. However, even if we considered the statement, we do not interpret it to mean that Ray and his fiancée had rented a room at the hotel. The phrase "Me and my fiancée," relates to the part of the sentence explaining why they were dropping off items, not to the part of the sentence discussing who rented the room. The most that might possibly be said is that the statement is ambiguous. Ray dispelled any ambiguity during his later deposition, however, when he stated that his fiancée's mother had rented the room, that he and Tammie were not staying at the hotel, and that he did not know whether anyone else was staying in the room with Tammie's mother. Ray also said during the deposition that he and Tammie were on their way to buy carpet for their house on the day of the incident and only stopped by the hotel to deliver some items to Tammie's mother. There is no possible way that these statements could be deemed ambiguous.

{¶ 60} Nonetheless, while Ray clearly did not rent the room, this does not mean that he was a licensee. Ohio courts have long distinguished between "invitees" and "licensees" for purposes of premises liability and have imposed different standards of negligence depending on the category into which injured parties fit.

■ {¶ 61} "Business invitees are persons who come upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner. * * * It is the duty of the owner of the premises to exercise ordinary care and to protect the invitee by maintaining the premises in a safe condition.

\* \* \* Conversely, a person who enters the premises of another by permission or acquiescence, for his *own* pleasure or benefit, and not by invitation, is a licensee. A licensee takes his license subject to its attendant perils and risks. The licensor is not liable for ordinary negligence and owes the licensee no duty except to refrain from wantonly or willfully causing injury." *Light v. Ohio Univ.* (1986), 28 Ohio St.3d 66, 68, 28 OBR 165, 502 N.E.2d 611.

{¶ 62} Based on the fact that Ray was not staying at the Ramada as a guest, and that his purpose in being there was for the benefit of Ray's mother, not Ramada, the trial court found that Ray was a licensee. Under the above legal standards, Ramada would, therefore, be responsible only for refraining from willful or wanton misconduct. We disagree, because the trial court adopted an overly narrow construction of the term "business invitee."

{¶ 63} The trial court cited several premises-liability cases in its decision, but the only one that involved hotel visitors was the case of *Carpenter v. Columbus Motor Lodge, Inc.* (1990), 67 Ohio App.3d 589, 587 N.E.2d 916. In *Carpenter*, the hotel had a policy of letting its employees and their guests use the pool facilities. The plaintiff was a friend of a hotel employee's spouse and was injured when she ran through a plate-glass door at the hotel. 67 Ohio App.3d at 591, 587 N.E.2d 916. At the time, the plaintiff was at the hotel with the employee's spouse and was running toward the pool building. In considering whether the plaintiff was an invitee or licensee, the Tenth District Court of Appeals noted that the Ohio Supreme Court had recently concluded that "the type of benefit conferred by a business invitee upon the owner or occupier of land must take some tangible form, whether economic or otherwise." Id. at 593, 587 N.E.2d 916, citing *Provencher v. Ohio Dept. of Transp.* (1990), 49 Ohio St.3d 265, 266–267, 551 N.E.2d 1257, and fn. 1.

{¶ 64} The plaintiff in *Carpenter* claimed that such an economic benefit existed because the hotel encouraged the plaintiff's presence in order to entice other guests to use the pool. However, the Tenth District disagreed, noting:

{¶ 65} "The only evidence presented by plaintiff to support a finding that her presence conferred a benefit upon the hotel was the affidavit of the hotel employee at whose invitation she was using the pool. That affidavit indicates that the hotel policy regarding pool use by friends and family of hotel employees was promulgated only for purposes of maintaining employee morale. The affidavit indicates the benefit was conferred upon the employee, and not the hotel, and consisted only of the ability of the employee to visit with friends and family during working hours. Under the facts of this case, which involves an injury to a guest of an employee of the hotel and not to the employee, such 'benefit' is too intangible to merit jury consideration of plaintiff's status. \* \* \* As the trial

court concluded, the benefit is too remote to convert plaintiff's status from licensee to that of an invitee." Id. at 593–594, 587 N.E.2d 916.

{¶ 66} Unlike the plaintiff in *Carpenter*, Ray was not present as the guest of a hotel employee. Instead, Ray was invited by a guest who had paid the hotel to use its facilities. In this regard, the case of *Uddin v. Embassy Suites Hotel*, 165 Ohio App.3d 699, 2005-Ohio-6613, 848 N.E.2d 519, is more analogous. In *Uddin*, a room was rented at the hotel, and a ten-year old child and her family were invited to a birthday party there. The child drowned while attending the party and swimming in the hotel pool. Based on these facts, the Tenth District Court of Appeals found that the child and her family were business invitees because she and her family "rightfully came upon the hotel premises for some purpose that was beneficial to defendants as a business owner." 165 Ohio App.3d 699, 2005-Ohio-6613, 848 N.E.2d 519, at ¶ 11.

{¶ 67} In *Detrick v. Columbia Sussex Corp., Inc.* (1993), 90 Ohio App.3d 475, 629 N.E.2d 1081, the plaintiff entered a hotel to use a pay phone and then went into a restroom, where she slipped and fell. We did not address the plaintiff's status, but simply noted that the trial court's finding, i.e., that plaintiff was a business invitee, had not been disputed on appeal. Id. at 475, 629 N.E.2d 1081. The argument for finding a business invitation is even stronger in the present case, where the individual was on the premises at the invitation of a paying guest.

{¶ 68} Although Ray was on the hotel premises to bring items, he was there at the invitation of Gordon, who had rented a room. Ray also testified that he and Tammie intended to visit with Gordon, although he hoped to make the visit brief. Under the circumstances, we see nothing that would distinguish this case from *Uddin* and *Detrick*. A hotel that opens its premises to paying guests reasonably contemplates that members of the public will enter at the invitation of the guests, and the hotel benefits both directly and indirectly from accommodating its paying guests in that respect.

{¶ 69} Because Ray was an invitee, Ramada had a duty to "exercise ordinary care" and to protect Ray by maintaining the premises in a safe condition. *Light*, 28 Ohio St.3d at 68, 28 OBR 165, 502 N.E.2d 611. The question thus becomes whether there are genuine issues of material fact on this point. Ramada contends that no presumption of negligence arises simply because Ray fell. According to Ramada, a business may use wax without incurring liability, unless the business is negligent in the materials used or the manner of applying them. In particular, Ramada relies on *Colletti v. J.C. Penney Co., Inc.* (Mar. 9, 1993), Franklin App. No. 92AP–1605, 1993 WL 69438, which involved a patron's slip and fall on a floor that had been waxed the day before. Similar to the situation in the present case, a J.C. Penney employee had slipped and almost fallen some time before the plaintiff fell, although the specific time lapse between

the two incidents was not specified. Id. at *2. Under these circumstances, the Tenth District Court of Appeals found that:

{¶ 70} "Ms. Colletti [the plaintiff] was not injured because she slipped on water or any other 'foreign substance.' She was injured because she slipped on a floor which allegedly had been waxed the day before she fell. Even though the surface was sufficiently slick that a store employee who was considerably younger than Ms. Colletti had slipped and almost fallen on the surface some time before Ms. Colletti fell, the fact that two individuals slipped does not show that J.C. Penney violated its duty to maintain the premises in a *reasonably* safe [as opposed to a perfectly safe] condition." Id.

{¶ 71} Accordingly, the Tenth District affirmed a summary judgment rendered in favor of J.C. Penney. Id. The Sixth District Court of Appeals reached a similar conclusion in a case in which the plaintiff slipped and fell on a restaurant floor that appeared to be highly waxed. In that case, the plaintiff presented affidavits from two friends who were at the restaurant, who said that the floor was not wet but seemed highly waxed and that the floor was slippery or very slippery. These friends also indicated that a female employee had said after the incident that the floor was slippery on previous occasions and that the employee had almost fallen there herself. *Shelmon v. Damon's Toledo, Inc.* (July 28, 1995), Lucas App. No. L–95–005, 1995 WL 444378, *1.

{¶ 72} Even under these circumstances, the Sixth District rejected liability on the restaurant's part. The Sixth District noted that a business owner is not liable to patrons who slip and fall on floors that are treated with a floor "dressing," as long as it is properly applied and maintained. Id. at *2. Accord, *Spatar v. Avon Oaks Ballroom,* Trumbull App. No. 2001–T–0059, 2002-Ohio-2443, 2002 WL 1012597, at ¶ 102–105 ("the mere fact that a floor has been waxed is not sufficient to establish negligence. * * * Rather, it must appear that the wax was improperly applied and/or maintained").

{¶ 73} On the other hand, courts have found triable issues of fact when a business owner had knowledge of a dangerous condition, but failed to protect invitees against the condition or to warn of it. For example, in *Sauter v. One Lytle Place,* Hamilton App. No. C–040266, 2005-Ohio-1183, 2005 WL 627794, the First District held that summary judgment was not properly rendered when a tenant slipped on an unusually slippery floor and the landlord failed to warn tenants and guests about the floor. Id. at ¶ 11–13. The First District stated that the plaintiff had created a triable issue of fact regarding whether the landlord:

{¶ 74} "[H]ad a duty to warn its tenants and their guests, particularly those coming in from around the pool area, to take particular caution upon entering the kitchenette. As noted by Prosser, a possessor of land is 'under an obligation to disclose to the licensee [and, by extension, an invitee] any concealed dangerous

conditions of the premises of which he had knowledge.' Prosser, Law of Torts (4 Ed.1971) 381, Section 60. 'The licensee [or invitee] may be required to accept the premises as the occupier uses them, but he is entitled to at least equal knowledge of the danger, and should not be expected to assume the risk of a defective bridge, an uninsulated wire, *an unusually slippery floor,* or a dangerous step, in the face of a misleading silence.' Id." (Emphasis sic.) 2005-Ohio-1183, 2005 WL 627794, at ¶ 13.

{¶ 75} Although the issue is close, we find genuine issues of material fact regarding whether Ramada failed to warn Ray of a dangerous condition about which Ramada had superior knowledge. Although Ray stated in his deposition that he did not know what caused him to slip, he later said that the floor was "awful shiny" and that he believed he had slipped because of the wax. Ray additionally stated that a Ramada maid, Juwanna Crooks, witnessed his fall, and told him that she had fallen in the same vicinity an hour or an hour and a half before. Crooks also told Ray that she had gone to management and had told them that there was too much wax on the floor and that something had to be done. Despite this fact, Ramada did not post signs or warnings about the floor. Compare *Leimeister v. Akron City Hosp.* (Nov. 15, 1995), Summit App. No. 17260, 1995 WL 678549, *1 (finding that summary judgment was properly rendered for a hospital because of warnings given to plaintiff about the slippery condition caused by wax on the floor).

{¶ 76} Ramada contends that Crooks's statements are not admissible, because they are hearsay. We disagree.

{¶ 77} In *Cordle v. Bravo Dev., Inc.,* Franklin App. No. 06AP–256, 2006-Ohio-5693, 2006 WL 3072549, the plaintiff slipped and fell in a restaurant. After the fall, an employee stated that "something had spilled earlier in the day and that the floor was freshly waxed." Id. at ¶ 16. The Tenth District Court of Appeals noted that "[f]actual assertions made by an employee, that are within the knowledge and scope of that employee's employment are admissible." Id. The Tenth District found that the employee's statements were ones of fact, not law, and were "well within the scope of the employee's knowledge and employment." Id. Therefore, the Tenth District held that the statements were admissible and were nonhearsay under Evid.R. 801(D)(2)(d), which allows admissions of party opponents, made by an agent or servant within the scope of employment, during the existence of the employment. Id. at ¶ 15–17.

{¶ 78} We reached a similar conclusion in *Huss v. Amoco Corp.* (Mar. 5, 1999), Greene App. No. 98–CA–52, 1999 WL 115001, which involved a plaintiff's slip and fall on spilled gasoline. After the fall, an employee told the plaintiff that the manager had been informed that the gas pumps were not cutting off. We

concluded that the statement was admissible because it was not hearsay under Evid.R. 801(D)(2)(d). Id. at *2–3.

{¶ 79} Because there are genuine issues of material fact concerning Ramada's knowledge of a dangerous condition and failure to warn of the condition, the trial court erred in rendering summary judgment in Ramada's favor. Accordingly, the second assignment of error is sustained.

## IV

{¶ 80} Ray's first assignment of error having been overruled, and his second assignment of error having been sustained, the summary judgment rendered in favor of Ramada is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

WOLFF, P.J., and DONOVAN, J., concur.