[Cite as *Masterson v. Brody*, 2022-Ohio-3428.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

MARK MASTERSON,
ADMINISTRATOR, ET AL.,                    :

      Plaintiffs-Appellants/          :
      Cross-Appellees,

      v.                              :                    No. 111035

ZACHARY BRODY, ET AL.,                    :

      Defendants-Appellees/
      Cross-Appellants.              :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 29, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-16-857804

---

### *Appearances:*

Law Office of John T. Forristal and John T. Forristal, *for
appellants*.

Gallagher Sharp LLP, Mark A. Greer, and
Shane A. Lawson, *for appellees*.

SEAN C. GALLAGHER, A.J.:

{¶ 1}   Mark Masterson, as Administrator of the Estate of Phil Masterson ("Masterson"), Ayako Hobbs, Georgiann Masterson, Kevin Masterson, Mark Masterson (personally), Matt Masterson, James Masterson, and Molly Barz (collectively "the Estate") appeal the trial court's decision granting partial summary judgment upon all claims against PMJ Properties, Inc., Island Club Property Owners Association, and Equity Trust Co. f/b/o Paul Michael Jeris (collectively "Island Club"). Although not parties to this appeal, Zacchary Brody, Cameron Parris, Clifton Knoth, and Matt Brotzki (collectively "tortfeasors")[1] were alleged to be involved in the misconduct causing Masterson's death. For the following reasons, we affirm.

{¶ 2}   This is one of three appeals from the underlying civil litigation arising from the death of Phil Masterson on the Island Club's property in 2011 where he was beaten and left to die by the tortfeasors. In the other two appeals, 8th Dist. Cuyahoga Nos. 111043 and 111048, two individual tortfeasors appealed from a jury verdict awarding damages based on their involvement in the killing and attempted cover-up of Masterson's death. The primary aggressor, Zachary Brody, pleaded guilty to involuntary manslaughter, and Parris was convicted of a misdemeanor relating to the attempted concealment of the crime. In light of the pending appeals against the parties directly involved in Masterson's death, the recitation of the facts

---

[1] This designation is not meant to undermine or minimize the conduct of those directly involved in the death of Masterson. This is the civil action, grounded in tort principles, and as such, we will use the traditional designation of the parties throughout this discussion.

relevant to this appeal will be brief and narrowly focused on the issues presented in this appeal, which primarily deal with the legal question of whether the landowners out of possession of the property have a duty to prevent another from attacking a third party. The parties' sole dispute relates to a question of law as to whether a duty arose under general tort principles. Any facts related to the killing itself are for background information to better understand the legal principles at play in this case and are not to be construed as binding on any other aspect of this case.

{¶ 3} Masterson and the tortfeasors separately vacationed in Put-in-Bay over the Labor Day weekend in 2011. The tortfeasors rented a privately owned cabin from the Island Club. Each of the separate entities comprising the Island Club had separate responsibilities. The cabin was owned by Equity Trust, which employed PMJ Properties to manage the property and the rentals. There are several cabins or properties within the same development, and all are separately owned and managed. Island Club Property Owners Association managed and maintained the common area of the development, including sporadically providing a security person whose primary function was to facilitate the calling of law enforcement officers should the need arise.

{¶ 4} Masterson was drinking with the tortfeasors at their rental cabin on the night of Masterson's death and remained on the tortfeasors' rented property through their permission, although the scope of that permission was disputed at trial. After drinking throughout the waning hours of the evening, Masterson and the tortfeasors began arguing, leading to a physical confrontation in which Masterson

was severely injured. Masterson was moved to the woods near the cabin while he was still alive. He died sometime the next day. After the criminal trials, the Estate filed a civil wrongful death action against the tortfeasors and the Island Club.

{¶ 5} In the complaint, the Estate advanced several claims against the Island Club, all sounding in tort: (1) common law negligence (failure to exercise ordinary care to protect Masterson or provide security personnel as alleged in Counts I, II, and III); (2) wrongful death (based on the tortious conduct as alleged in Count VII); and (3) negligent hiring or supervision of the security personnel (as alleged in Count VIII). The remaining counts were unrelated to the Island Club or failed to assert stand-alone claims: Counts IV and V only involved claims against the tortfeasors, and Count VI pertained to a loss of consortium claim that is a derivative claim to the underlying negligence claims advanced against the Island Club.[2]

{¶ 6} Upon the Island Club's motions for summary judgment, the trial court concluded that the Island Club owed no duty to Masterson, and judgment was entered in the Island Club's favor upon all claims. The Estate appealed, raising a single assignment of error in which the Estate claims "[t]he trial court erred by granting Defendants PMJ Properties, Inc., Island Club Property Owners

---

[2] Since the sole issue is whether the Island Club owed a duty of care to Masterson, we need not separately address the loss of consortium claims. *Fehrenbach v. O'Malley*, 113 Ohio St.3d 18, 2007-Ohio-971, 862 N.E.2d 489, ¶ 11. If the trial court's decision on the tort claims is correct, the loss of consortium cannot independently survive; and if the trial court erred, the loss of consortium claim would be revived by operation of law. Either way, the loss of consortium claim need not be addressed in this appeal.

Association, and Equity Trust Company's f/b/o Paul Michael Jeris joint motion for summary judgment."

{¶ 7} Summary judgment rulings are reviewed de novo, and appellate courts apply the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Review of summary judgment is governed by the standard set forth in Civ.R. 56. *Argabrite v. Neer*, 149 Ohio St.3d 349, 2016-Ohio-8374, 75 N.E.3d 161, ¶ 14. Summary judgment is appropriate only when "[1] no genuine issue of material fact remains to be litigated, [2] the moving party is entitled to judgment as a matter of law, and [3] viewing the evidence in the light most favorable to the nonmoving party, reasonable minds can reach a conclusion only in favor of the moving party." *Id.*, citing *M.H. v. Cuyahoga Falls*, 134 Ohio St.3d 65, 2012-Ohio-5336, 979 N.E.2d 1261, ¶ 12. Appellate courts provide no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.

{¶ 8} In order to "'maintain a wrongful death action on a theory of negligence, a plaintiff must show (1) the existence of a duty owing to plaintiff's decedent, (2) a breach of that duty, and (3) proximate causation between the breach of duty and the death.'" *Estate of Ridley v. Hamilton Cty. Bd. of Mental Retardation & Dev. Disabilities*, 102 Ohio St.3d 230, 2004-Ohio-2629, 809 N.E.2d 2, ¶ 14, quoting *Littleton v. Good Samaritan Hosp. & Health Ctr.*, 39 Ohio St.3d 86, 92, 529 N.E.2d 449 (1988). "'The existence of a duty is a question of law for a court to decide, even if resolving that question requires the court to consider the facts or evidence.'"

*A.M. v. Miami Univ.,* 2017-Ohio-8586, 88 N.E.3d 1013, ¶ 33 (10th Dist.), quoting *Martin v. Lambert*, 2014-Ohio-715, 8 N.E.3d 1024, ¶ 17 (4th Dist.). The Estate's negligence-based tort claims all fall under the same umbrella — each of the alleged tort claims requires the Estate to demonstrate that Island Club either owed a duty to prevent the tortfeasors from causing injury to Masterson or owed a duty to protect Masterson under Ohio law. The question to be answered, therefore, is whether a special relationship exists between the Island Club and either the tortfeasors or Masterson that gives rise to a duty to act.

{¶ 9} At the onset, we must recognize the Estate's attempt to muddle the tort analysis. According to the Estate, the Island Club owed a duty to protect Masterson as an invitee or a social guest on the property under the principles established for resolving premises-liability claims. Premises-liability claims generally arise from unsafe and defective conditions of an improvement to real property. *See* R.C. 2305.131; *Wilson v. Durrani*, 164 Ohio St.3d 419, 2020-Ohio-6827, 173 N.E.3d 448, ¶ 30; *Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, 948 N.E.2d 931, ¶ 25 (premises-liability claims generally arise from the quality or condition of the premises). The Estate's citations to authority all demonstrate this concept: *Gladon v. Greater Cleveland Regional Transit Auth.,* 75 Ohio St.3d 312, 313, 662 N.E.2d 287 (1996) (liability action based on the standard of care owed to a passenger lying on the train tracks struck by the train); *Shump v. First Continental-Robinwood Assocs.*, 71 Ohio St.3d 414, 644 N.E.2d 291 (1994) (faulty smoke detectors considered to be the hazardous condition causing the

plaintiffs' injuries); *Ray v. Ramada Inn N.*, 171 Ohio App.3d 1, 2007-Ohio-1341, 869 N.E.2d 95, ¶ 1 (2d Dist.) (slip and fall caused by excessive wax on the floor); *Andler v. Clear Channel Broadcasting, Inc.*, 670 F.3d 717, 721 (6th Cir.2012) (plaintiff injured by stepping into an unexpected hole near the pathway on a campground).

{¶ 10} The entrant's status on the property (as an invitee or social guest, licensee or trespasser) is a reference to the relationship between the possessor of land and the entrant. *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, ¶ 10, citing *Gladon* at 315. When the negligence occurs in the context of a premises-liability action, the first inquiry is the relationship between the entrant and the landowner because that establishes the scope of the duty of care owed. *Shump* at 417 ("[T]he common-law classifications of trespasser, licensee, and invitee determine the legal duty that a *tenant* owes others who enter upon rental property that is in the exclusive possession of the tenant." (Emphasis sic.)); *see also Donnelly v. Berea*, 8th Dist. Cuyahoga No. 108753, 2020-Ohio-2722, ¶ 13, citing *Dysart v. Estate of Dysart*, 2d Dist. Miami No. 2009 CA 24, 2010-Ohio-1238, ¶ 39.

{¶ 11} The Estate's claims against the Island Club do not arise from a theory of premises liability. *See, e.g., Estate of Ciotto v. Hinkle*, 2019-Ohio-3809, 145 N.E.3d 1013, ¶ 26 (6th Dist.) (Ohio courts considered the duty to protect others from criminal conduct without referencing premises-liability standards), citing *Blevins v. Hartman*, 5th Dist. Richland Nos. 12CA115 and 12CA116, 2013-Ohio-3297. There are no allegations of a physical defect or other hazardous condition arising from the property itself, nor are there any allegations that the Island Club maintained both

possession and control of the cabin at the time of Masterson's death.[3] *Miami Univ.*, 2017-Ohio-8586, 88 N.E.3d 1013, at ¶ 37, citing *Lambert*, 2014-Ohio-715, 8 N.E.3d 1024, at ¶ 36.

{¶ 12} Although we recognize that courts have referenced premises-liability analysis in instances in which the one in possession and control of the property failed to warn of criminal misconduct of other persons, the key inquiry there focuses on the defendant's possession and control of the property arising from a special relationship between the business owner and anyone accepting an invitation to that business owner's property. *See, e.g., Wheatley v. Marietta College*, 2016-Ohio-949, 48 N.E.3d 587, ¶ 61 (4th Dist.). That duty of reasonable care, however, does not arise from the premises-liability context, but instead arises through the recognition of a special relationship between the "possessor" of land who holds it open to the public and those that enter in response to the invitation. Restatement of the Law 2d, Torts 122, Section 314A(3) (special relations giving rise to the duty to protect another exist as between "[a] possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation"). This is generally referred to as the business invitee, a recognized special

---

[3] In the complaint, in paragraphs five and six, the Estate alleged that the Island Club defendants are "owners, possessors, and lessors of" the cabin properties, but the tortfeasors "were possessors, renters, or occupants" of the cabins on the night of the killing. Thus, there is no allegation that the Island Club had both possession and control of the properties on the night of Masterson's death; only the tortfeasors had possession and control at that time through their possession and occupation of the cabin.

relationship requiring the business owner to exercise reasonable care to prevent harm to its customers.

{¶ 13} The Island Club ceded control and possession of the property to the tortfeasors, shifting the duty to protect an entrant onto the property to the tortfeasors. *Shump,* 71 Ohio St.3d at 417, 644 N.E.2d 291 ("Where a party other than the owner possesses a premises (as in the case of a leased premises), under the common law of premises liability, the possessor or occupier and not the owner owes the applicable legal duty to the entrant."), citing 5 Harper, James & Gray, Law of Torts, Sections 27.2 and 27.16, 134, 271, (2 Ed.1986); Keeton, Dobbs, Keaton & Owen, *Prosser & Keeton on the Law of Torts*, Section 63, 434 (5th Ed.1984); Page, Law of Premises Liability (1976) 2-3; and 2 Restatement of the Law 2d, Torts, Sections 328E to 350 (1965). Any duty owed to Masterson as an invitee on the premises was owed by the tortfeasors, unless the injury was the result of a hazardous defect on the property, in which case the social guest doctrine would impute liability to the landowner. This is not a premises-liability action, but instead is an action seeking to hold out-of-possession property owners liable for failing to protect a third party or failing to control the criminal actions of the tortfeasors on a property that is not open to the public.

{¶ 14} Under that theory of liability, the relationship between the entrant and the owner of the premises is not relevant (i.e., whether the entrant is an invitee/social guest, licensee, or trespasser). *See, e.g., Simpson v. Big Bear Stores Co.,* 73 Ohio St.3d 130, 132, 652 N.E.2d 702 (1995); *Miami Univ.,* 2017-Ohio-8586,

88 N.E.3d 1013, at ¶ 33 (the duty to protect another from harm arises from a special relationship between the parties). In *Simpson,* for example, in concluding that the duty to keep a premises safe for others is owed only by the one in possession and control of the land, the Ohio Supreme Court did not discuss the injured person's status on the property. *Id.* In that case, the plaintiff was attacked by a third party while walking in the parking lot adjacent to a business she had recently frequented. *Id.* According to the Ohio Supreme Court, her status as an invitee while in the establishment was irrelevant to the question of whether the business owner owed a duty of care while the plaintiff traversed the parking lot possessed by another entity. *Id.* at 134. The court concluded that because there was no special relationship between the plaintiff and the business owner at the time of the injury, her status as an invitee was irrelevant. *Id.*

{¶ 15} The only relevant issue in this situation is whether there is a special relationship between the Island Club and either Masterson or the tortfeasors giving rise to a duty to control the conduct of the tortfeasors or to protect Masterson.

{¶ 16} In Ohio, courts engage in the traditional Restatement analysis to determine the existence and scope of a duty owed. *Estates of Morgan v. Fairfield Family Counseling Ctr.*, 77 Ohio St.3d 284, 296, 673 N.E.2d 1311 (1997). It is therefore settled under Ohio law that there is no duty to control the conduct of a third person to prevent the commission of physical harm to another person "'unless (a) a special relation exists between the actor [(Island Club)] and the third person [(tortfeasors)] which imposes a duty upon the actor to control the third person's

conduct, or (b) a special relationship exists between the actor [(Island Club)] and the other [(Masterson)] which gives to the other the right to protection.'" *Godwin v. Facebook, Inc.*, 2020-Ohio-4834, 160 N.E.3d 372, ¶ 17 (8th Dist.), quoting *Hite v. Brown*, 100 Ohio App.3d 606, 613, 654 N.E.2d 452 (8th Dist.1995), citing *Gelbman v. Second Natl. Bank of Warren*, 9 Ohio St.3d 77, 79, 458 N.E.2d 1262, 1263 (1984) (adopting the Restatement of the Law 2d, Torts, 122, Section 315 (1965)), and *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.*, 45 Ohio St.3d 171, 173, 543 N.E.2d 769, fn. 1 (1989).

{¶ 17} Importantly, "[f]oreseeability alone does not create a duty; instead, it is one of a number of factors that must be considered." *Santana v. Rainbow Cleaners, Inc.*, 969 A.2d 653, 666 (R.I.2009), citing *Ferreira v. Strack*, 636 A.2d 682, 688, fn. 4 (R.I.1994); *Estates of Morgan* at 293 ("foreseeability alone is not always sufficient to establish the existence of a duty"). If the defendant has no duty to act based on the absence of a special relation with the third person or the tortfeasor, the foreseeability of the resulting harm is irrelevant — there is no duty to act as a matter of law. *See, e.g., Armstrong v. Best Buy Co., Inc.,* 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 5 (the open-and-obvious doctrine obviates the duty to act despite the foreseeability of the harm); *Simpson*, 73 Ohio St.3d at 134, 652 N.E.2d 702.

{¶ 18} There is no argument that the Island Club owed a duty to control the acts of the tortfeasors,[4] nor do any of the traditionally recognized relationships apply between the Island Club and the tortfeasors.[5] In other words, the Estate is invoking the second part of the Restatements analysis: that "a special relationship exists between the actor [(Island Club)] and the other [(Masterson)] which gives to the other the right to protection." *Godwin* at ¶ 17. Examples of special and definite relationships as between the actor and the injured party include (1) common carrier and its passengers, (2) innkeeper and guests, (3) possessor of land holding it open to the public and those who enter in response to the invitation (business invitee), (4) custodian and individual taken into custody, and (5) employer and employee.

---

[4] The Estate argues that the Island Club owes a duty to Masterson as an invitee or social guest or that the Island Club defendants owe a duty to protect Masterson based on a special relationship, such as a business and invitee or innkeeper and guest relationship. There is no argument in this appeal, nor raised below, that the Island Club maintained a special relationship with the tortfeasors giving rise to a duty to control their conduct. Under the traditional Restatement analysis, there are five recognized "special relations" that justify imposition of a duty to control the acts of another. A parent owes a duty to control the conduct of his or her child (Section 316); a master owes a duty to control the conduct of his or her servant (Section 317); the possessor of land or chattels owes a duty to control the conduct of a licensee (Section 318); an actor in charge of a person with dangerous propensities owes a duty to control such a person (Section 319); and an actor having legal custody of another owes a duty to control the other's conduct (Section 320). Restatement of the Law 2d, Torts 122, Sections 316-320.

[5] We note that although the Estate has not preserved this claim for review, an actor such as the Island Club who permits a third person to use land or chattels in their possession as a licensee, owes a duty to exercise reasonable care to control the conduct of third persons to prevent harm to others if the actor is present in certain circumstances. Restatement of the Law 2d, Torts 122, Section 318. It is undisputed that the Island Club was not present during the events leading to, and immediately after, Masterson's death, and no other exception gives rise to a special relationship between the Island Club and the tortfeasors. As a result, the Estate has not established that the Island Club owed a duty to control the tortfeasor's conduct under the first exception to the general rule.

*Jackson v. Forest City Ents., Inc.*, 111 Ohio App.3d 283, 675 N.E.2d 1356 (8th Dist.1996), citing Restatement of the Law 2d, Torts 122, Section 314A.

{¶ 19} The Estate claims that the Island Club, the owners out of possession of the property, owed a duty to protect Masterson because the Island Club is either a business owner opening its property to the public and Masterson accepted that invitation as the precursor to his presence on the property, or the Island Club is an innkeeper and Masterson the guest.

{¶ 20} The Estate does not present any argument demonstrating that the Island Club is an "innkeeper" as that term is traditionally understood. Under common law, an "innkeeper" is "a person who makes it his business to entertain travelers and passengers, and provide lodging and necessaries for them." *Rowan v. Weaver*, 787 F.2d 592 (6th Cir.1986), quoting *Reed v. Teneyck*, 103 Ky. 65, 44 S.W. 356 (1898); *Bell v. Maryland*, 378 U.S. 226, 297, 84 S.Ct. 1814, 12 L.Ed.2d 822 (1964), fn. 17 (Goldberg, J., concurring) (if an innkeeper opens his property for travelers, there is an implied engagement that he entertain all persons who travel that way); *Ballentine's Law Dictionary* (2010) (Defining "inn" as "[a] public house of entertainment for all who choose to visit it. Elaborately defined, a house held out to the public by the proprietor thereof as a place where transient persons who come in a fit condition will be received and entertained as guests for compensation."). Under Ohio statutory law, a hotel or inn is more narrowly defined as any structure containing more than five sleeping rooms for transient guests of 30 days or less. R.C. 3731.01(A)(2).

{¶ 21} The Estate has not established that the temporary rental of a residential property, which is not open to the public and has three bedrooms solely used for the person renting the cabin, meets the definition of an "inn" for the purposes of the innkeeper exception to the no-duty-to-act rule. App.R. 16(A)(7). The Estate simply presumes that a cabin rental is considered an "inn." In order for this court to conclude that the cabin rental is tantamount to an "inn" for the purpose of the innkeeper exception to the no-duty-to-act rule, this court would have to impermissibly supplement the arguments and provide the rationale to those ends. This is beyond an appellate court's role and responsibility. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19, quoting *State v. Bodyke,* 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part).

{¶ 22} As to the second cited exception to the general rule, regarding the business-invitee, the Estate has not alleged, much less demonstrated with evidentiary submissions, that the Island Club opened the rental property to the public, the necessary foundation of the business-invitee exception. From the undisputed facts, the tortfeasors rented the property and had exclusive control over those permitted on the property during the rental period.[6] And even if the Estate

---

[6] The Estate claims that the rental agreement includes provisions permitting the Island Club to terminate the rental based on the misconduct of the renters or their guests, and that fact establishes the Island Club's ability to exclude or allow persons. Quite the contrary, those types of provisions demonstrate that the renter of the property is liable for the actions of their guests and must carefully exercise their discretion in permitting others on the property otherwise face termination of the rental agreement. That provision

could establish that fact, under black-letter Ohio law, a business owner owes a duty to warn or protect its invitees from criminal acts of others only "when the business owner knows or should know that there is a substantial risk of harm to its invitees on the premises *in the possession and control of the business owner*." (Emphasis added.) *Simpson,* 73 Ohio St.3d 130, 652 N.E.2d 702, at syllabus; Restatement of the Law 2d, Torts 122, Section 314B, Comment c (innkeeper owes no duty to guests injured while away from the innkeeper's premises). The duty owed, however, "does not extend to premises not in the possession and control of the business owner." *Id.*; Restatement of the Law 2d, Torts 122, Section 314A(3).

{¶ 23} The Estate does not present any argument or discussion establishing that the syllabus-holding from *Simpson* extends to an owner out-of-possession of the premises. App.R. 16(A)(7).

{¶ 24} Instead, the Estate focuses on the secondary question of whether the criminal acts were foreseeable. In cases in which a special relationship gives rise to the duty owed, foreseeability of the harm caused relates to causation and does not impact the existence of a duty. *Estates of Morgan,* 77 Ohio St.3d at 293, 673 N.E.2d 1311 ("foreseeability alone is not always sufficient to establish the existence of a duty" to protect, or prevent harm to, another). If a special relationship gives rise to a duty to another, foreseeability of the injury is not a consideration as to the existence of a duty. *Godwin*, 2020-Ohio-4834, 160 N.E.3d 372, at ¶ 21. In other words, in this

---

confirms that the tortfeasors had the right to permit or exclude others from their cabin during the rental period.

context, foreseeability concerns the scope of the duty owed, not its existence. *Gedeon v. E. Ohio Gas Co.*, 128 Ohio St. 335, 338, 190 N.E. 924 (1934) ("In delimiting the scope of duty to exercise care, regard must be had for the probability that injury may result from the act complained of."); *Simpson* at 134; s*ee also Lawrence v. La Jolla Beach & Tennis Club, Inc.*, 231 Cal.App.4th 11, 23, 179 Cal.Rptr.3d 758 (2014); *Aegis Ins. Servs. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 178 (2d Cir.2013), citing *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 231, 750 N.E.2d 1055, 727 N.Y.S.2d 7 (2001). Since the foreseeability question need only be answered after it is established that the business owner is in possession of the premises upon which the injury occurred, we need not address the foreseeability analysis. *See Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, at ¶ 19, quoting *Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, at ¶ 78 (O'Donnell, J., concurring in part and dissenting in part).

{¶ 25} As a matter of law, the Island Club did not share a special relationship with Masterson under settled tort principles. It necessarily follows that there is no additional, independent duty to provide security personnel in an effort to satisfy the nonexistent duty to protect others. And further, there can be no negligent hiring or supervision claim holding the Island Club vicariously liable for the acts or omissions of its employees based on the Estate's concession that the Island Club provided no security on the night of Masterson's tragic death. There are no allegations demonstrating that any employee's conduct caused the injuries through negligent behavior that would be attributed to the employer through vicarious liability. The

Estate, to the contrary, alleged and maintains that there was no security provided on the night of Masterson's death. On that point, the only question is whether the Island Club owed a duty to employ security at all times, a question we answered in the negative.

{¶ 26} The events of and immediately after Masterson's death are tragic and contemptable. However, with regard to the Island Club, entities not in possession of the rented cabin at the time of Masterson's death and who had no control over the tortfeasors' actions, we cannot extend liability based on the undeniable impact Masterson's death has on his friends and family. Under the state of the law, owners out of possession of the property owe no duty to protect third persons from criminal conduct by the possessors of the premises absent a special relationship with the injured person. On this legal issue, the trial court did not err in granting judgment in favor of the Island Club upon all claims.[7]

{¶ 27} We affirm.

It is ordered that appellees recover of appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

---

[7] In light of our conclusion disposing of the Estate's sole assignment of error, we need not reach the issues in the cross-appeal, which seeks to preserve error with respect to the trial court's decision on evidentiary issues. The cross-appeal is moot and need not be addressed. App.R. 12(A)(1)(c).

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, ADMINISTRATIVE JUDGE

KATHLEEN ANN KEOUGH, J., and
MICHELLE J. SHEEHAN, J., CONCUR